UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                               CASE NO. 8:24-cr-222-VMC-CPT

ALMANDO SAPP, JR.

### UNITED STATES' SENTENCING MEMORANDUM

The defendant, Almando Sapp, amassed a collection of more than three thousand videos and images of children—including toddlers and bondage—being raped. These videos contained horrific, evil content available on the Internet, depicting the most vulnerable in our society being harmed in unspeakable ways. The defendant amassed this collection by seeking out those on the Internet creating this content and paying for what he desired. For his actions, the United States respectfully requests that the Court sentence the defendant to 132 months imprisonment, with a lifetime of supervised release.

**I.   Background**

On May 15, 2024, a federal grand jury returned a three count Indictment, charging Sapp with two counts of receipt of child pornography and one count of possessing child pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(a)(4)(B). Doc. 1. On January 9, 2025, the defendant pled guilty, and the Court accepted the guilty plea. Doc. 60-61.

II. <u>**Presentence Investigation Report**</u>

On May 7, 2025, U.S. Probation issued its final Presentence Investigation Report ("PSR"). Doc. 76. It determined the defendant's applicable guidelines range for the underlying offenses as 121 months to 151 months, based on an adjusted total offense level of 32 and a criminal history category I. *Id.* at 100. Counts One and Two are punishable by a term of imprisonment of five years to a maximum of 20 years and the applicable period of supervised release is five years to life. *Id.* at 9-102. Count Three is punishable by a maximum term of imprisonment of 20 years, and an applicable period of supervised release of five years to life. *Id.* For the reasons that follow, this Court should adopt the PSR's facts and guideline calculation.

    **A. Defendant is not entitled to a two-level decrease pursuant to USSG § 2G2.2(b)(1).**

Defense requests the Court grant a two-level decrease pursuant to § 2G2.2(b)(1), arguing that the defendant's conduct is "limited to the receipt and solicitation of material involving the sexual exploitation of a minor" and "the defendant did not intend to traffic in, or distribute, such material." § 2G2.2(b)(1). It is undisputed that the defendant did not distribute child sexual abuse material (CSAM). The issue is whether the defendant's conduct demonstrates an "intent to traffic in" CSAM. Probation's guideline calculation does not include this two-level decrease due to the defendant's participation in an online conversation where the defendant offers to "sponsor" an individual online who contemplated "kidnapping a girl next week" for the purpose of sexual exploitation. See PSR ¶ 12 and 13. The conversation

2

occurred between the defendant and an unknown Telegram user, from whom the defendant was purchasing CSAM, as follows, on November 3, 2022:

| | |
|---|---|
| SAPP: | Yo |
| SAPP: | cp?? |
| 5705093347: | Yeah, are you interested in buying videos? |
| SAPP: | Yep..depending on content |
| 5705093347: | $70 for 50 videos of blacks |
| 5705093347: | $55 for 50 videos of other races |
| 5705093347: | [Sent an image. This image depicted 15 thumbnails with a title "Blacks 3". Thirteen of the images clearly depicted prepubescent and pubescent females. Five clearly depicted CSAM.] |
| … | |
| SAPP: | Na blacks are trash..just mostly dancing |
| SAPP: | I like real cp action |
| … | |
| 5705093347: | [replying to message "$55 for 50 videos of other races"] Take |
| SAPP: | Can u sent all intercourse vids if I paid extra |
| 5705093347: | yeah |
| SAPP: | $70 kool? |
| 5705093347: | Yeah |
| SAPP: | Send link |
| SAPP: | PayPal? |
| 5705093347: | [Sent PayPal link] |
| 5705093347: | [Sent an image. This image depicted a screenshot with the payment type "friends and Family" circled with in a PayPal screen] |
| SAPP: | Got ya… |
| SAPP: | It's done |
| SAPP: | Make sure all intercourse… no dancing, no solo |

3

| | |
|---|---|
| SAPP: | [Sent an image. This image depicted a screenshot of the payment confirmation screen within PayPal. It stated, "You send $70.00 to [South African national]" The Amount is for $70.00 USD and the PayPal fee is $5.83. The payment delivery date is November 9, 2022.] |
| 5705093347: | Alr hit me up on my other account @theelolifan, you'll receive your videos from that account |
| SAPP: | u same person? |
| SAPP: | I already been dealing w him |
| SAPP: | he outta vids he said |
| SAPP: | He outta vides he said |
| SAPP: | Or something |
| 5705093347: | Bull |
| SAPP: | Lol |
| SAPP: | I'm serious I've bought hundreds from him |
| SAPP: | But he says it's all prepared and he can't separate shit |
| 5705093347: | I'm not out of vids, how many purchase you've made, since you claim I'm out of videos? |
| SAPP: | Man U said you will let me know when u have more prepared like two days ago |
| SAPP: | I sent the money I just want vids of intercourse only |
| 5705093347: | you're right, but the thing is, I have already withdrawn your cash [male sign emoji] |
| 5705093347: | So just take the blacks |
| SAPP: | I don't want money back bro I just want content |
| SAPP: | If u send blacks send intercourse only |
| 5705093347: | That's impossible |
| 5705093347: | it's not my fault you changed your name |
| SAPP: | Man U just told me u can send intercourse only above |
| SAPP: | Bro I have same name I just messaged thee lolifan account w same name |

4

| | |
|---|---|
| SAPP: | Go look at it |
| 5705093347: | You've already seen the videos I was about to send |
| SAPP: | Ah shit wow |
| SAPP: | Have I seen the black too?? |
| 5705093347: | Nope |
| 5705093347: | But they are not penetration |
| SAPP: | None of em?? |
| 5705093347: | Perhaps a few |
| 5705093347: | I'm gonna start producing my own videos, would you sponsor me? |
| SAPP: | Since I paid extra send 100 black and we good |
| 5705093347: | Bull |
| 5705093347: | Videos of blacks go for $70 anyway |
| SAPP: | Bro it was $55 |
| SAPP: | I offered 70 for the intercourse only remember |
| 5705093347: | [replying to message "$70 for 50 videos of blacks"] Hello |
| 5705093347: | [replying to message "$55 for 50 videos of other races"] . |
| SAPP: | And u gonna produce your own videos?? U have talent for that |
| SAPP: | If u know what I mean |
| 5705093347: | [replying to message "if u know what I mean"] Well,I don't |
| 5705093347: | Wtf do you mean anyway? |
| SAPP: | Just send the 50 black new ones I haven't seen |
| SAPP: | I mean u have girls?? |
| SAPP: | How u gonna produce no girls? |
| 5705093347: | don't worry boy |
| SAPP: | I'm down to sponsor depending on wat u need and what's my cut |

5

| | |
|---|---|
| SAPP: | Don't call me boy either I don't like that shit, |
| 5705093347: | I'll kidnap a girl next week, I'm still trying to rent a house somewhere safe for me |
| 5705093347: | [replying to message "Don't call me boy either I don't like that shit"] Whatever man |
| 5705093347: | [replying to message "I'm down to sponsor depending on wat u need and what's my cut"] obviously,you'll get those videos for free,fair enough? |
| SAPP: | Yea just let me know |
| SAPP: | Need more details and we can go from there |
| 5705093347: | Ohk just keep in touch with me through my other account because I'm gonna loose this one |
| 5705093347: | I'll just let you know when I have the little girl in the house with me and I'll send you proof then you'll start sponsoring me |
| SAPP: | Got ya |

This conversation highlights the defendant's desire for aggravated and new content of minors being sexually abused. He clarified his desire to watch children being "penetrated." When the Telegram user proposed producing his own videos to satisfy the defendant and asked defendant to sponsor him, the defendant was more than willing. He asked how it would happen, confirmed if he had "a girl" to produce with, and stated he was "down to sponsor." To be clear, this defendant was "down to sponsor" a telegram user who was already selling videos of girls being raped, orchestrating the kidnapping and rape of other girls all to satisfy his prurient interest. The conversation showed the lengths the defendant was willing to go to for his deviant sexual urges. While there is no evidence obtained that this individual actually "kidnapped a girl" to record her being raped for the defendant's pleasure,

6

the fact that it was discussed and was entertained by the defendant not only demonstrates his extreme danger to the community, but also this defendant's contribution to the perpetual sexual abuse of children.

    This conversation may be considered by the Court in the application of the sentencing guidelines as relevant conduct. Pursuant to USSG § 1B1.3, relevant conduct includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant…that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." The above Telegram chat fits squarely in this category. The defendant sought out the production of new CSAM to receive and add to the collection he possessed. His conduct went beyond mere downloading of images from the internet and storing them on his electronics; it encouraged the production of CSAM through his willingness to pay financially for the specific content he desired.

    This egregious conversation supports Probation's guideline calculation to not include a two-level reduction for those defendants whose conduct is limited to receipt and possession and who did not intend to traffic in or distribute CSAM, as this defendant. Should the Court agree with defense and apply the two-level reduction, the defendant's guideline calculation would be a level 30, criminal category I, with a guideline range of 97-121 months. In this case, the government would still request a sentence of 132 months prison as the appropriate sentence. This would result in a one-level upward variance, as the sentencing range for a level 31, criminal category I

is 108-135. This conversation is appropriately considered for an upward variance based upon its egregious nature. Pursuant to 18 U.S.C. § 3553(b)(2)(A)(i), if "the court finds that there exists an aggravating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence greater than that described." This is such a case.

In addition to the Telegram conversation, and as discussed below, this Court can consider a one-level upward variance for the fact that this defendant possessed ten videos over five minutes in length on his iPhone, and 382 videos through Mega that were over five minutes in length, with the longest being one hour and twenty-three minutes long. PSR ¶ 14. The Sentencing Commission considered such an upward variance may be warranted when the enhancement for number of images and videos possessed does not adequately reflect the seriousness of the sexual exploitation involved. USSG 2G2.2, cmt. n.6(b)(ii).

The defendant's conduct, taken with the sentencing factors set forth in 18 U.S.C. § 3553(a), demands a sentence of 132 months prison. He poses a danger to children in the community and that danger is unlikely to abate over time.

### III. Argument for a 132- month prison sentence

The Supreme Court has declared, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United Sates*, 522 U.S. 38, 41 (2007). Although a sentencing court may not presume that a guideline-range sentence is reasonable, the

Sentencing Guidelines remain a significant and pivotal component of the sentencing process. The Court "must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a), explaining any variance from the former with reference to the latter." *Nelson v. United States*, 129 S. Ct. 890, 891-92 (2009).

Section 3553(a)(1) provides that, in determining a sentence, courts must consider the nature and circumstances of the offense, as well as the history and characteristics of the defendant. Additional factors outlined in § 3553(a)(2) include the need for the sentence to reflect the seriousness of the offense; to promote respect for the law; to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed education or vocational training, medical care, or other corrective treatment in the most effective manner. 18 U.S.C. § 3553(a)(2). The defendant's conduct, considered in conjunction with the sentencing factors set forth, calls for a 132-month prison sentence.

### A. Nature and Circumstances of the Offense

In November 2022, Homeland Security Investigations (HSI) Rio Grande Valley (RGV), Texas, identified a South African national operating a criminal organization in South Africa involving the distribution of thousands of videos containing child sexual abuse material (CSAM).  During chat conversations with an undercover agent, the South African national offered to sell several different bundles containing CSAM in exchange for payments over PayPal. An investigation of

PayPal records led agents to identify individuals purchasing CSAM. PSR at 8. In November 2022, a PayPal account linked to "Almando's iPhone" paid $70 for a CSAM bundle. *Id*. at 9. This bundle was "50 videos of blacks." IP information revealed that the defendant purchased this CSAM bundle while at his job, working at a pharmacy. *Id*.

The undercover agent also purchased the $70 CSAM bundle. Through that purchase, agents reviewed the CSAM, which included an eight minute and 50 second video depicting a prepubescent female between the age of seven and eleven orally penetrated by an adult, who proceeds to ejaculate in the prepubescent female's mouth. A second video in this bundle was approximately one minute and 56 seconds and depicted a female between eight and thirteen years old, and depicted bondage violence. A third video was approximately two minutes and 41 seconds and depicted a prepubescent female between four and seven years old being anally penetrated by an adult male.

On February 5, 2024, agents confronted the defendant at the border, at Orlando airport, and seized his iPhone 11. Within the defendant's device, agents found evidence of Sapp using the name, "Kristen Santos", which was consistent with the PayPal account used to purchase CSAM. While the defendant used his own credit card information, he used the name of another individual to avoid detection. HSI located Ms. Santos, who had no connection to the defendant, but did have a connection to Lakeland, Florida.

Also within the defendant's cellular phone was additional evidence of the defendant's penchant for purchasing CSAM. Between September and October 2023, the defendant also paid money through CashApp to receive Mega links from different Telegram accounts, which contained CSAM. *Id*. at 10. Mega is an encrypted cloud-based storage and file hosting service. In September 2023, the defendant purchased a Mega link for $10, which contained a video depicting a prepubescent female between seven and ten years old, exposing her genitals to the camera while a dog licked her genitals. Also in September 2023, the defendant purchased a Mega link for $20, which included a video depicting a baby between one and three years old in a car seat, while an adult male masturbated his penis in the baby's mouth. In October 2023, the defendant purchased a Mega link for $20, which included a video depicting a prepubescent girl between five and eight years old being vaginally penetrated by an adult male.

Notable within the defendant's CSAM collection within his cellular phone, is that he possessed ten videos over five minutes long, and within his Mega links, approximately 382 videos over five minutes long, the longest being one hour and twenty-three minutes long. *Id*. at 14. The length of these videos is highly aggravating factor to consider. The defendant was also present in numerous Telegram groups dedicated the exchange of CSAM. In total, he possessed 86 images and 3,796 videos. *Id*. NCMEC, the National Center for Missing and Exploited Children, identified 142 known series in his collection.

The nature and circumstances of this case are abhorrent. Although this Court must consider other factors beyond the defendant's offense conduct, this Court should nonetheless give significant weight to his offense conduct in crafting his sentence here. *See, e.g.*, *United States v. Croteau*, 819 F.3d 1293, 1309 (11th Cir. 2016) ("The weight given to any specific § 3553(a) factor is committed to the sound discretion of the district court."). Receipt and possession of CSAM are not victimless crimes. Each child depicted in those videos and images is a victim – a victim who has to live with the sexual abuse they endured that was documented and put on the internet to live in perpetuity. As the Eleventh Circuit explained in *United States v. Irey*: "the greater the harm the more serious the crime, and the longer the sentence should be for the punishment to fit the crime." 612 F.3d 1160, 1206 (11th Cir. 2010), *cert. denied*, 131 S. Ct. 1813 (2011). Because "[t]he seriousness of the crime varies directly with the harm it causes or threatens" this Court should impose a 132-month prison sentence. *Id.* at 1206.

The defendant's graphic CSAM collection revictimized countless children. He consumed media depicting child sex abuse with no regard to the broken lives depicted in the images and videos that he so willingly shared and helped create. As the Supreme Court has recognized, "[t]he distribution of photographs and films depicting sexual activity by juveniles is intrinsically related to the sexual abuse of children . . . . [T]he materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation . . . ." *Ferber*, 458 U.S. at 758–59 nn. 9–10 (citations omitted). In this case, the defendant's

12

purchase of CSAM highlights his contribution to the abuse of children, worthy of a lengthy punishment. A guidelines sentence, at a minimum, is necessary to recognize the victims harmed by the defendant's conduct and to restore public confidence in our laws protecting children.

### B. History and characteristics of the defendant

The defendant's actions were calculated and premeditated, not a solitary lapse of judgement. His search for "quality cp" he was willing to pay for, spanned years. The defendant's actions are such that he presents a danger to the community. His focus on child rape videos underscores this fact. There is nothing in the defendant's history and character to explain his behavior other than a prurient interest in minors.

Additionally, despite the defendant's education and employment as a pharmacist, he still chose to engage in criminal activity. In 2016, while employed by Winn Dixie as a pharmacist, the defendant took advantage of his position to engage in 21 fraudulent transactions, loading gift cards for his personal use. PSR ¶ 61. This demonstrates the defendant's inability to be a law-abiding citizen and supports the court imposing a guideline sentence.

The defendant also demonstrated his danger to the community through his blatant disregard of his pretrial release conditions. In May 2024, the defendant was released on conditions pending trial. In July 2024, he was allowed the use of a Gabb cellphone. In October 2024, the defendant deviated from his approved employment location and made numerous unapproved stops. The defendant claimed that the unapproved stops were related to employment. He lied. The defendant purchased a

cellular phone with internet capabilities in violation of the Court's order, which was subsequently discovered through a tip many months later. The defendant's disregard for the seriousness of his crimes and inability to abide by the Court order, disturbingly accessing the internet after a committing a crime on the internet, demonstrates the need for a 132-month sentence. Only through a prison sentence can the public be adequately protected from the defendant.

### C. Adequate deterrence and the need to protect the public

Deterrence is especially important for crimes involving the sexual abuse of children, including child pornography. *See United States v. Goldberg*, 491 F.3d 668 (7th Cir. 2007). "Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor." *See id*.

Courts have recognized receipt and possession of child sexual assault material are harmful crimes warranting harsh sentencings. *United States v. Lichtman*, 683 Fed. Appx. 873 (11th Cir. 2017) (Upholding a 151-month sentence); *United States v. Wayerski*, 624 F.3d 1342, 1354-55 (11th Cir. 2010) (holding it was not unreasonable for the district court to consider the defendants' child pornography offenses to be serious and deserving a significant sentence). The Court in *Wayerski* also noted that "[t]hose who receive and exchange child pornography create a demand that influences the production of child pornography and the attendant physical and emotional injury to children." *Id.* at 1354. That sentiment could not be truer in this case, as evidenced by the defendant's purchase of CSAM and his heinous discussions expressing his desire for "penetration" videos, encouraging the rape of children.

This Court should also impose a 132-month sentence to send a strong warning to other individuals currently involved in or considering similar conduct. *See Irey,* 612 F.3d at 1208 ("There is another aspect of the compounding harm that the production and distribution of child pornography inflicts. It may incite or encourage others to sexually abuse children.").

IV. **Conclusion**

This Court should sentence the defendant to a 132-month sentence of imprisonment. Nothing in the offense conduct or the defendant's history and characteristics warrants a downward departure. This term of imprisonment and lifetime of supervised release is the only reasonable sentence because it is the only sentence that reflects the seriousness of the defendant's crimes and relevant conduct, provides just punishment, fully protects children in the community, and promotes respect for the law.

    Respectfully submitted,

    GREGORY W. KEHOE
    United States Attorney

    */s/ Ilyssa M. Spergel*
    Ilyssa M. Spergel
    Assistant United States Attorney
    Florida Bar No. 0102856
    400 N. Tampa Street, Suite 3200
    Tampa, Florida 33602
    Telephone: (813) 274-6300
    Facsimile:  (813) 274-6178
    E-mail: ilyssa.spergel@usdoj.gov

U.S. v. Sapp                                                    Case No. 8:24-cr-222-VMC-CPT

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Adam Benjamin Allen, Esq.

>*/s/ Ilyssa Spergel*
>Ilyssa Spergel
>Assistant United States Attorney
>Florida Bar No.: 102856
>400 N. Tampa St., Ste. 3200
>Tampa, FL 33602-4798
>Telephone: (813) 274-6000
>Facsimile: (813) 274-6358
>E-mail: Ilyssa.Spergel@usdoj.gov